**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **WALLACE HARRIS**, ) | |
| ) | |
| Plaintiff ) | |
| ) | 2:09cv292 |
| v. ) | Electronic Filing |
| ) | |
| **MICHAEL J. ASTRUE** ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant ) | |

**MEMORANDUM OPINION**

I. **INTRODUCTION**

Wallace Harris ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Defendant" or "Commissioner") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). 42 U.S.C. §§ 401-433, 1381 - 1383f. Currently before the court is defendant's Motion for Summary Judgment. The record has been developed at the administrative level. For the following reasons, Defendant's Motion for Summary Judgment will be granted and the decision of the Commissioner will be affirmed.

II. **Procedural History**

Plaintiff filed for DIB on December 6, 2005, claiming an inability to work as of May 25, 1995. (R. at 64 - 68).[1] Plaintiff applied for SSI on December 9, 2005, claiming an inability to

---

[1] Citations to Document Nos. 5 - 5-1, the Record, *hereinafter*, "R. at __."

work as of June 9, 2005. (R. at 333 - 36). Plaintiff's applications initially were denied on February 15, 2006. (R. at 57 - 60, 339 - 43). Plaintiff requested a hearing before an administrative law judge. (R. at 55). A hearing was held on October 25, 2007. Plaintiff appeared, represented by counsel, and testified. (R. at 23, 344). A vocational expert, George J. Starosta, also testified. (R. at 28 - 30, 344). The ALJ issued a decision on January 10, 2008, finding plaintiff was not disabled. (R. at 8 - 20). Plaintiff filed a request for review with the Appeals Council, which was denied on February 12, 2009, thereby making the decision of the ALJ the final decision of the Commissioner. (R. at 4 - 6).

Proceeding pro se, plaintiff filed his complaint on March 27, 2009. Defendant filed an Answer on July 24, 2009. A scheduling order was issued requiring Plaintiff to file a motion for summary judgment by August 31, 2009. When plaintiff failed to file a motion, an order was issued on October 23, 2010, directing plaintiff to file his motion by November 11, 2009. Plaintiff was advised that "[t]he failure to file [the] motion and brief by that date will result in the Court adjudicating plaintiff's appeal and request for review of the decision below on the basis of the record as it now exists, which will include consideration of defendant's motion and brief." Order of October 23, 2009. (Doc. No. 9). Accordingly, the matter will be adjudicated based on the record as it now exists, including consideration of defendant's motion for summary judgment.

### III. Standard of Review

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g)[2] and 1383(c)(3).[3] When reviewing a final decision, this court's role

---

[2] Section 405(g) provides in pertinent part:

> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ... brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business

is limited to determining whether substantial evidence exists in the record to support the ALJ's findings of fact. Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)(quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Additionally, if the ALJ's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); Richardson, 402 U.S. at 390. A district court cannot conduct a de novo review of the Commissioner's decision nor re-weigh evidence of record. Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998); see also Monsour Medical Center v. Heckler, 806 F.2d 1185, 90-91 (3d. Cir. 1986) ("even where this court acting de novo might have reached a different conclusion . . . so long as the agency's factfinding is supported by substantial evidence, reviewing courts lack power to reverse either those findings or the reasonable regulatory interpretations that an agency manifests in the course of making such findings."). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. See 5 U.S.C. § 706.

To be eligible for social security benefits under the Act, a claimant must demonstrate that

---

42 U.S.C. § 405(g).

[3] Section 1383(c)(3) provides in pertinent part:

> The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.

42 U.S.C. § 1383(c)(3).

he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. §423(d)(1)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986). A five-step sequential analysis is used to evaluate the disability status of each claimant. 20 C.F.R. § 404.1520. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., pt. 404 subpt. P., appx. 1; (4) whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy. 20 C.F.R. § 404.1520(a)(4); see also Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003). If the claimant is determined to be unable to resume his or her previous employment at step four, the burden shifts to the Commissioner at step five to prove that, given plaintiffs's mental or physical limitations, age, education, and work experience, he or she is able to perform substantial gainful activity in the national economy. Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986).

**IV.     Statement of the Case**

Plaintiff was born on December 22, 1958, and was 49 years of age at the time of the hearing. (R. at 18). Plaintiff has an eleventh grade education. (R. at 347). At the time of the hearing, Plaintiff had lived at his younger brother's house for approximately ten years. (R. at 353). Plaintiff's younger brother works full-time. (R. at 353). Plaintiff has been diagnosed with diabetes mellitus, asthma, and hepatitis C. (R. at 125, 129).

Plaintiff's medical history reflects a history of tobacco and alcohol abuse as early as October 29, 2002. (R. at 290). On numerous occasions treating doctors have noted Plaintiff's problems with alcohol, illicit drug, and tobacco use. (R. at 138, 159, 163, 172, 198, 247, 255,

4

294, 296, 307, 312, 315, 331). As early as February 17, 2003, Derrick Tobias, M.D., noted that Plaintiff did not comply with instructions for treating his diabetes. (R. at 285 - 87). Plaintiff did not maintain a proper diet, and despite receiving medication for his condition, his diabetes was "uncontrolled." (R. at 286 - 87). Even early on, Plaintiff required admission to the emergency room because of noncompliance issues, and his medical records indicated that his condition was a challenge to treat because he did not follow medical advice. (R. at 276). On many occasions Plaintiff simply failed to take his medication. (R. at 273).

Despite claims of compliance with his diet and medication regimens, Plaintiff exhibited little to no control of his diabetes. He experienced numerous diabetes-related hospitalizations, and multiple treating physicians concluded that Plaintiff was not compliant with medical advice. (R. at 127, 129). While en route to the emergency room on September 4, 2004, for diabetes-related illness, paramedics found that Plaintiff was not even storing his insulin medication properly. (R. at 129). Plaintiff also consistently failed to see an eye doctor to monitor diabetes-related eye issues, or to see a doctor for treatment of his hepatitis C. (R. at 193, 227, 256, 259, 266, 294). At a November 3, 2004 admission to the emergency room, he informed the attending physician that he had not seen an eye doctor in years. (R. at 266). At a September 7, 2006, emergency room visit, Plaintiff admitted his diabetes was poorly controlled and he had not been seeing his primary care provider for diabetes treatment. (R. at 296).

In 2004, Plaintiff was admitted to the emergency room three times for diabetes-related illness. (R. at 125 - 331). On all three occasions, the medical notes indicated that noncompliance with medication regimen and/ or diet was a cause or major contributing factor. (R. at 125 - 331). In 2005, Plaintiff was admitted to the emergency at least thirteen times for diabetes-related illness. (R. at 125 - 331). On at least six occasions, Plaintiff's failure to comply with medical advice was cited as a cause or major contributing factor. (R. at 125 - 331). In 2006, Plaintiff was admitted to the emergency room at least eight times for diabetes-related illness. (R. at 125 - 331). On at

5

least six of those occasions, Plaintiff's failure to comply with medical advice regarding maintenance of his diabetes was cited as a cause or major contributing factor. (R. at 125 - 331). In 2007, Plaintiff was admitted to the emergency room at least twice for diabetes-related illness. (R. at 125 - 331). The medical notes indicated that Plaintiff continued to be non-compliant in following his medication regimen and diet plan. (R. at 125 - 331). Medical notes at discharge typically indicated that Plaintiff responded well to treatment and that his condition was stabilized without notable difficulty. (R. at 125 - 331).

A physical residual functional capacity assessment ("RFC") was performed by state-agency consultant Jeanette Brinkos on February 13, 2006. (R. at 248 - 54). Plaintiff was determined to have the capacity to lift fifty pounds occasionally and twenty-five pounds frequently. (R. at 249). Plaintiff could stand or walk for six hours of an eight hour work day, and sit for six hours. (R. at 249). Ms. Brinkos found no other functional limitations. (R. at 248 - 54). In assessing the severity of Plaintiff's diabetes, asthma, hypertension, and hepatitis C, Ms. Brinkos cited a normal chest x-ray and echocardiogram exhibiting a low likelihood for significant coronary artery disease. (R. at 253). Ms. Brinkos also cited a physical examination on September 8, 2005, which produced unremarkable results. (R. at 253). Plaintiff was neurologically intact. (R. at 253). Ms. Brinkos concluded Plaintiff was not significantly limited physically because his medical history suggested that proper treatment of his conditions had been successful in controlling any ill effects. (R. at 253).

At the administrative hearing, Plaintiff testified that he had been covered by Gateway health insurance since March of 2000. (R. at 347). He suffers from diabetes, asthma, and hepatitis C. (R. at 349). He claimed to receive regular treatment for his diabetes from "Dr. Dorry" at Allegheny General Hospital (R. at 350). Other doctors at the hospital have also treated him for diabetes. (R. at 350). His diabetes makes his fingers numb, clouds his vision, makes his feet cold and numb, makes him feel constantly fatigued, frequently makes him dizzy, and causes him to

6

vomit. (R. at 351, 354, 358). These symptoms have occurred every day for at least the previous five years. (R. at 355). Picking up or manipulating objects, and walking distances of more than a block, proves to be a challenge. (R. at 355). Sensitivity in Plaintiff's feet causes him pain whenever he steps on an object. (R. at 356).

When the ALJ questioned Plaintiff about numerous doctors' notations that had indicated he consistently failed to follow his treatment regimen as directed, Plaintiff responded that he always took his medicine properly, but he would "just get sick." (R. at 351, 357). When asked whether he stopped smoking, as directed by his doctors, Plaintiff indicated he continued to smoke. (R. at 352). Plaintiff claimed to be taking care of himself, but explained that he had difficulty caring for himself as diligently as his doctors directed. (R. at 358). When he takes his insulin shots he starts to feel some relief, but then becomes very tired. (R. at 358). While he is home alone during the day, he lies down most of the time, either watching television or sleeping. (R. at 354, 358).

Plaintiff uses an albuterol inhaler to control his asthma symptoms. (R. at 352). Plaintiff testified that heat and extreme cold cause his asthma symptoms to worsen. (R. at 352). Smoke also exacerbates his condition, and he has been told that he has emphysema. (R. at 352 - 53). He also has hepatitis C, but he has not seen a doctor for treatment and has not received medications, despite the urging of his treating physicians. (R. at 353).

Plaintiff admitted having difficulty reading and writing, but could count money fairly proficiently. (R. at 347 - 49). In the past he has worked as a dishwasher, a kitchen prep person, and a cleaner, and has also worked shoveling snow. (R. at 359).

The ALJ asked the vocational expert if an individual of Plaintiff's age, education, and work experience would be able to hold employment with the following limitations: light work; occasional balancing, stooping, kneeling, crouching, crawling, and climbing; no concentrated exposure to dust, fumes, odors, gases, environments with poor ventilation, temperature extremes, humidity, or dampness; and no more than fundamental reading, writing, and math. (R. at 361).

7

Mr. Starosta explained that several jobs were available in significant numbers in the national economy: "dietary aid," of which there were one million jobs in the national economy; "folder," of which there were one-hundred thousand jobs in the national economy; and, "cleaner," of which there were three million jobs in the national economy. (R. at 362 - 63). Mr. Starosta also testified that an employee could be off-task ten to twelve percent of the time and not jeopardize his or her employment. (R. at 364). An individual could also miss up to two days a month and maintain his or her employment. (R. at 364). Absences and failure to stay on-task beyond these limits would exclude substantial gainful employment. (R. at 364).

In his decision dated January 10, 2008, the ALJ made the following findings:

1. The [Plaintiff] met the insured status requirements of the Social Security Act through March 31, 2005;
2. The [Plaintiff] has not engaged in substantial gainful activity since May 25, 1995;
3. The [Plaintiff] has the following severe impairments: diabetes with peripheral neuropathy and retinopathy, hepatitis C, and asthma;
4. The [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1;
5. After careful consideration of the entire record, I find that the [Plaintiff] has failed to follow prescribed treatment under criteria set forth in the above regulations and Social Security Ruling 82-59. I conclude the [Plaintiff] has a condition or conditions which if treated would allow him to perform a wide range of light work involving only occasionally balancing, stooping, kneeling, crouching, crawling, and climbing; and not involving concentrated exposure to dust, fumes, odors, gases, humidity, dampness, environments with poor ventilation, or exposure to temperature extremes; or occupations not requiring more than the most fundamental reading, writing, and math skills;
6. The [Plaintiff] is unable to perform any past relevant work;
7. The [Plaintiff] was born on December 22, 1958, and is presently 49 years of age, which is defined as a younger individual age 18-49;
8. The [Plaintiff] has a limited education and is able to communicate in English;
9. Transferability of job skills is not an issue in this case because the [Plaintiff's] past relevant work is unskilled;
10. Considering the [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform;
11. The [Plaintiff] has not been under a disability, as defined in the Social

|     |                                                                                                                                                                                                              |
| --- | ------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- |
|     | Security Act, from March 2000 through the date of this decision; and,                                                                                                                                        |
| 12. | In accordance with the provisions of 20 C.F.R. 404.1530 and 416.930, and the Social Security Ruling 82-59, the [Plaintiff] has failed to follow prescribed treatment.                                        |

(R. at 13 - 20). Accordingly, the ALJ denied Plaintiff's application for benefits. (R. at 20).

## V. Discussion

In his decision, the ALJ acknowledged that Plaintiff's diabetes, if untreated, would likely prevent him from engaging in any substantial gainful activity. (R. at 17). Plaintiff's diabetes was also not of a temporary nature, having continued to require consistent treatment in lieu of serious medical complications and resulting in hospitalization over the course of many years. (R. at 17). The ALJ determined that the prescribed treatment to manage his diabetes would have been sufficient to restore Plaintiff's functional capacity to engage in substantial gainful activity, in light of the relative ease with which Plaintiff was treated in the hospital and the doctors' continual findings that Plaintiff's hospitalizations primarily were attributable to Plaintiff's failure to follow directions. (R. at 17 - 18).

Social Security Ruling ("SSR") 82-59, in conjunction with 20 C.F.R. §§ 404.1530, 416.930, dictates what is required to prove that an otherwise disabling condition, amenable to treatment, is not disabling for DIB or SSI purposes because a claimant failed to maintain a prescribed treatment regimen that would have allowed the claimant to work despite the disabling condition. Failure to follow a prescribed treatment regimen will result in a denial of benefits when:

1. The evidence establishes that the [claimant's] impairment precludes engaging in any substantial gainful activity . . .;
2. The impairment has lasted or is expected to last for 12 continuous months from onset of disability or is expected to result in death;
3. Treatment which is clearly expected to restore capacity to engage in any substantial gainful activity . . . has been prescribed by a treating source; and,
4. The evidence of record discloses that there has been a refusal to follow prescribed treatment.

9

SSR 82-59 at 1.

Moreover, the ability to control a limitation with medication or treatment is a factor which the ALJ may consider in assessing the severity of an impairment. Welch v. Heckler, 808 F.2d 264 (3d Cir. 1986); Mason v. Shalala, 949 F.2d 1058 (3d Cir. 1993). And it equally is well accepted that if a condition can be controlled with medication or treatment, it is not disabling under the Act. Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986); Reed v. Sullivan, 988 F.2d 812, 814 (8th Cir. 1993); see also 20 C.F.R. §404.1530 (b). When viewed as a whole, the record contains substantial evidence to support the ALJ's determination that Plaintiff's impairments do not produce disabling limitations.

Plaintiff has health care coverage. (R. at 16). He admitted to having been informed repeatedly of the risks associated with his diabetes and the consequences of continual noncompliance with medical advice. (R. at 17, 114). Moreover, when discharged from his hospitalizations, medical notes indicate Plaintiff understands what he needs to do to keep his diabetes in check - including maintaining a prescribed dietary and medication regimen. (R. at 17 - 18). Yet, overwhelming evidence from various treating physicians illustrate a prolonged attitude of noncompliance with respect to Plaintiff's diabetes as well as his asthma, and hepatitis C. (R. at 15 - 18).

Plaintiff claimed that he was not able to care for himself as competently as the medical staff at the hospital, but he always was compliant. (R. at 17 - 18). But as was outlined by the ALJ, Plaintiff's claims regarding his compliance were inconsistent with the opinions of Plaintiff's treating physicians, who over the course of several years and many emergency room visits and examinations documented a consistent failure to comply with medical advice without explanation. (R. at 17 - 18). Plaintiff failed to assert any reasonable, justifiable cause for his noncompliance.[4]

---

[4] Justifiable Cause for Failure to Follow Prescribed Treatment

1. Acceptance of a prescribed treatment would be contrary to the teachings and

10

(R. at 18). As such, the ALJ's decision that Plaintiff failed to follow prescribed treatment was supported by substantial evidence.

Similarly, there was no evidence in the medical record which contradicted the ALJ's determination that Plaintiff's asthma and hepatitis C did not significantly limit Plaintiff's ability to engage in substantial gainful activity, particularly in light of the ALJ's accommodations in formulating Plaintiff's RFC. (R. at 15 - 18). The record reveals that Plaintiff never received any significant treatment for asthma, and that he used an inhaler to control his symptoms. (R. at 15 - 18). There was no indication that the inhaler was ineffective, and despite Plaintiff's complaints of sensitivity to certain air conditions, he continued to smoke against doctors' advice. (R. at 15 - 18). Plaintiff also elected not to seek treatment for his hepatitis C, continued to drink - in some cases a six-pack of beer or more a week, and had no signs of severe liver disease. (R. at 15 - 18). As with Plaintiff's asthma, the ALJ determined that the RFC assessment sufficiently accommodated any legitimate limitations associated with Plaintiff's hepatitis C. (R. at 15 - 18). The record contained more than sufficient evidence to support this assessment.

---

tenets of the claimaint's . . . religion;
2. Cataract extraction for one eye is prescribed, but the loss of visual efficiency in the other eye is severe and cannot be corrected through treatment;
3. . . . fear of surgery may be so intense and unrelenting that it is, in effect, a contraindication to surgery;
4. The individual is unable to afford prescribed treatment which he or she is willing to accept, but for which free community resources are unavailable;
5. Any duly licensed medical source who has treated the claimant . . . advises against the treatment prescribed for the currently disabling condition;
6. The claimant . . . is presently unable to work because of a condition for which major surgery was performed with unsuccessful results, and additional major surgery is prescribed for the same impairment;
7. The treatment carries a high degree of risk because of the enormity or unusual nature of the procedure; and,
8. The treatment recommended involves amputation of an extremity.

SSR 82-59 at 4.

**VI. Conclusion**

In light of the lack of objective evidence indicating otherwise, the ALJ's determination that Plaintiff's diabetes mellitus, asthma and hepatitis C did not prevent him from participating in substantial gainful activity was supported by substantial evidence.

Based upon the foregoing, Defendant's Motion for Summary Judgment must be granted.

An appropriate Order will follow.

Date: August 17, 2010

s/ David Stewart Cercone
Davis Stewart Cercone
United States District Judge

cc: Wallace Harris
    3421 Gass Avenue
    Pittsburgh, PA 15212

    Jessica Smolar, Esq.
    United States Attorney's Office (PGH)
    700 Grant Street
    Suite 4000
    Pittsburgh, PA 15219
    (412) 644-3500